UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| JASON DENT, ) | |
|     Petitioner, ) | |
| ) | No. 23 CV 50050 |
| v. ) | Judge Iain D. Johnston |
| ) | |
| THOMAS BERGAMI, ) | |
|     Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Jason Dent has filed a habeas petition under 28 U.S.C. § 2241 seeking the restoration of good conduct time he lost as a result of a disciplinary proceeding. For the following reasons, his motion to admit exhibits [17] is granted, but his habeas petition [1] is denied.

**BACKGROUND**

During his time as an inmate at USP[1] Hazelton, Mr. Dent was disciplined for threatening a staff member with bodily harm. According to Mr. Dent's petition and reply brief, on August 27, 2021, he was in restraints as the result of an earlier incident with corrections officers. While in restraints, officers checked on him every fifteen minutes. During one of the restraint checks, Mr. Dent allegedly told officer J. Weaver, "Weaver when I get these chains off you better hope I don't see you I'ma cut you fake ass white boy Fuck You." For that, Mr. Dent was issued an incident report alleging two disciplinary violations: (1) threatening bodily harm, and (2) being insolent to a staff member. But Mr. Dent contends that the reporting officer falsified the incident report to cover up that during two separate restraint checks, a different officer squeezed his genitalia.

Disciplinary Hearing Officer Kenneth Craddock conducted Mr. Dent's disciplinary hearing on May 12, 2021. Case manager S. Burgess appeared at the hearing as Mr. Dent's staff representative. Mr. Dent had asked Mr. Burgess to review video of the disciplinary incident to confirm that the officers depicted in the video were not wearing their name tags. But instead of reviewing the video himself, due to COVID restrictions, Mr. Burgess asked Lt. Cruz of the Special Investigator Supervisor department to review it. Lt. Cruz submitted a statement that he reviewed the video and that staff depicted in the video were wearing their name tags. At the hearing, DHO Craddock dismissed the charge of insolence against Mr. Dent, but following the hearing found that he had committed the prohibited act of threatening bodily harm, for which he lost 27 days of good conduct time. Mr. Dent alleges that he attempted to administratively appeal

---

[1] The briefs and attachments variously refer to USP Hazelton, FCI Hazelton, and FCC Hazelton. In his petition Mr. Dent alleges he was at USP Hazelton at the time he was disciplined. Petition [1] at 10.

the decision of the disciplinary hearing officer, but that a corrections officer threw away the appeal form that he attempted to mail to the regional director.

Mr. Dent then filed a habeas petition under 28 U.S.C. § 2241 alleging his rights to due process were violated during the disciplinary proceedings in two ways: (1) he asked his staff representative to review video of the incident, but the representative asked an investigator to do so in violation of Bureau of Prisons policies; and (2) his disciplinary hearing officer was biased against him because of complaints Mr. Dent had made against the officer. Upon receiving Mr. Dent's petition, the Court ordered briefing. The petition is now fully briefed.

## ANALYSIS

Persons in the custody of the Bureau of Prisons have a liberty interest in good conduct time, and can challenge the loss of good conduct time by filing a motion for habeas relief under 28 U.S.C. § 2241. *See Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983). Although prisoners have due process rights in prison disciplinary proceedings, such proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). As a result, a prisoner has received due process if each of the following requirements are met: the prisoner (1) receives written notice of the disciplinary charges at least 24 hours before a disciplinary hearing; (2) has an opportunity to be heard before an impartial decision maker; (3) is able to call witnesses and present evidence that will not be unduly hazardous to safety or correctional goals; (4) receives a written statement of the evidence relied on and the reason for the decision; and (5) receives disclosures of any exculpatory evidence. *Id.* at 564-66.

The disciplinary decision will be upheld as long as it is supported by "some evidence in the record," which is a meager standard. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) ("once the meager threshold has been crossed our inquiry ends."). On habeas review, the court does not reweigh the evidence or determine credibility. *See Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). Rather, the court merely looks to whether there is *any* evidence in the record supporting the disciplinary decision. *See Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994) (a court can overturn a disciplinary decision only if no reasonable adjudicator could have found the inmate guilty of the offense based on the evidence presented).

A federal prisoner must exhaust his federal administrative remedies before seeking habeas relief in court. *See Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004) ("A common-law exhaustion rule applies to § 2241 actions even though § 1997e(a) does not."). Proper exhaustion requires compliance with the Bureau of Prisons' Administrative Remedy Program, which is set out at 28 C.F.R. §§ 542.10-542.19. *See Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). Under the program, a prisoner challenging the decision of a disciplinary hearing office must submit a form BP-10 to the regional director. *Id.* § 542.14(d)(2). The regional director has 30 days to respond. *Id.* § 542.18. If the prisoner is still not satisfied, he must take a final appeal to the Office of General Counsel in Washington, D.C. using form BP-11, which must be "accompanied by one complete copy or duplicate original

of the institution and regional filings and their responses." *Id.* § 542.15(a), (b). The General Counsel must respond within 40 days. *Id.* § 542.18. If a prisoner does not receive a timely response to his appeal, he "may consider the absence of a response to be a denial at that level." *Id.*

The common law recognizes exceptions to exhaustion, but the hurdle is high. *See Richmond*, 387 F.3d at 604. Exhaustion will be excused only when (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (internal quotation marks and citations omitted). The exhaustion requirement is not jurisdictional and so is waived if not raised by the government. *See Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987). Here, the government has raised the defense. *See* Response [14] at 3-5.

I. **Denial of Due Process**

Mr. Dent argues he was denied due process for two reasons. First, he contends he was denied due process because video of the incident was reviewed not by his assigned staff representative, but rather by Lt. Cruz of the Special Investigator Supervisor department. According to Mr. Dent, that violated the Bureau of Prisons' Inmate Discipline Program, under which a staff representative may not be the "executive staff, the DHO or alternate DHO, reporting officer, *investigating officer,* witness to the incident, and UDC members involved in the case." Inmate Discipline Program (Bureau of Prisons Program Statement 5270.09) § 541.8(d) (emphasis added). Mr. Dent contends that the video in fact revealed that staff members were not wearing name tags, that as a result Mr. Dent could not have known the staff members' names, and therefore the incident report alleging that Mr. Dent threatened Weaver by name was false.

Even assuming that Lt. Cruz was the type of investigating officer that the Inmate Discipline Program prohibits from serving as a staff representative, and that by reviewing the video Lt. Cruz served as a staff representative, the Bureau's violation of its own policies does not, by itself, establish a violation of an inmate's due process rights. *See Jones v. Cross*, 637 F.3d 841, 846 (7th Cir. 2011). Mr. Dent has not cited any authority holding that due process prohibits an investigating officer from serving as a staff representative. In fact, due process does not even require the Bureau of Prisons to provide a staff representative at all unless the prisoner is illiterate or the case is complex. *See Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992). Mr. Dent requested that the video be viewed for the disciplinary hearing, the person who viewed it described what the video depicted, and Mr. Dent has not established that due process required any more.

Second, Mr. Dent contends that DHO Craddock was biased against him "because I filed a complaint against him for covering up assaults on inmates." Petition [1] at 6. In his petition he does not identify when he complained about DHO Craddock, but in his reply brief he points to a letter he received from U.S. Representative Eleanor Holmes Norton referring to a congressional

inquiry she made on July 22, 2021, into Mr. Dent's allegations of staff misconduct. Reply [15] at 6 (citing Ex. 225).

A disciplinary hearing officer is "entitled to a presumption of honesty and integrity, and thus the constitutional standard for impermissible bias is high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) (cleaned up). A disciplinary hearing officer is sufficiently impartial as long as he or she was not "directly or substantially involved in the factual events underlying the disciplinary charges, or the investigation thereof." *Id.* at 667.

Mr. Dent does not assert that DHO Craddock was involved in the underlying incident or its investigation. Moreover, Mr. Dent does not contend that the DHO Craddock's decision finding that he engaged in the alleged prohibited act was not supported by some evidence in the record. *See Hogan v. Warden*, No. 3:17 CV 783, 2018 U.S. Dist. LEXIS 159866, at *8 (N.D. Ind. Sept. 19, 2018) (no suggestion DHO was biased where he thoroughly considered the record and found sufficient evidence of guilt). Instead, he attempts to establish bias based on prior accusations of misconduct he made against DHO Craddock. But the July 2021 letter from Rep. Norton attached to his reply brief does not identify the date on which Mr. Dent reported staff misconduct to Rep. Norton, nor does it refer to DHO Craddock. Rep. Norton forwarded to Mr. Dent the Bureau of Prisons' response that the information would be transmitted to the Bureau's Office of Internal Affairs, but it is sheer speculation that DHO Craddock ever learned of Mr. Dent's report to Rep. Norton before the May 12, 2021, disciplinary hearing.

The additional exhibits the Court granted Mr. Dent leave to file include a warden's response to Mr. Dent's reports of staff abuse at the Hazelton facility, and news releases about reports of staff abuse, but those are from 2023. Dkt. 17. The only evidence that he reported staff abuse before May 12, 2021, that the Court found while combing through his filings is his own note dated April 29, 2021, in which he states that he was "was called to the LT office for a Congressional Inquiry by U.S. Congresswoman Eleanor Holmes Norton." Reply [15], Ex. 205. But that note says nothing about any reports of misconduct by DHO Craddock. Moreover, even if at the time of the hearing DHO Craddock had known that Mr. Dent had reported him for misconduct in the past, "familiarity with the inmate, or even having had a dispute with the inmate over another matter, does not mean the DHO cannot be neutral so long as there was no direct or substantial involvement in the conduct or the investigation and no evidence of bias." *McMurrer v. Sproul*, No. 21 CV 772, 2022 U.S. Dist. LEXIS 610, at *10 (S.D. Ill. Jan. 3, 2022).

Accordingly, Mr. Dent has not established any basis for concluding that at the time of the disciplinary hearing on May 12, 2024, DHO Craddock would have known that Mr. Dent had reported him for staff abuse, or any other evidence clearing the high hurdle to establish impermissible bias.

**II.      Failure to Exhaust**

According to the government, Mr. Dent failed to administratively exhaust his administrative remedies because there is no record that he ever appealed the disciplinary hearing officer's decision. Mr. Dent states that he tried to appeal by giving an appeal form to a

corrections officer, but that instead of mailing it to the regional director as Mr. Dent had requested, the officer destroyed it.

An inmate is excused from exhausting if the administrative process is not available to him. *See Ross v. Blake*, 578 U.S. 632, 642 (2016). Here, Mr. Dent contends that the process was not available to him because an officer destroyed his appeal form. But the Court need not resolve the issue of whether the officer prohibited Mr. Dent from appealing because, even assuming that his efforts to appeal were thwarted, he has still failed to establish any violation of his due process rights and so his petition fails on the merits.

## CONCLUSION

The motion to file exhibits [17] is granted, but for the reasons given his petition [1] is denied.

Mr. Dent is advised that this is a final decision ending his case in this Court. If he wants to appeal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Mr. Dent need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

Date: September 4, 2024        By: _____
                                    Iain D. Johnston
                                    United States District Judge